**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 0:18-cv-60855-GAYLES/STRAUSS**

**COLEEN A. LEOGUE**,

      Plaintiff,

v.

**BROWARD COUNTY, a political**
**subdivision of the State of Florida**,

      Defendant.

_____/

**OMNIBUS ORDER**

      **THIS CAUSE** comes before the Court on Plaintiff Coleen A. Leogue's Motion for

Summary Judgment [ECF No. 50] and Defendant Broward County's Motion for Summary

Judgment [ECF No. 51] (collectively, the "Motions"). The Court has reviewed the Motions and

the record, heard oral argument, and is otherwise fully advised. For the reasons that follow,

Plaintiff's Motion is denied, and Defendant's Motion is granted.

**BACKGROUND[1]**

      Plaintiff was born with a mental disability that qualifies her as a disabled individual under

the Americans with Disabilities Act ("ADA"). Defendant employed Plaintiff in various capacities

in the Libraries Division at the Northwest Regional Library (the "Libraries Division")—

---

[1] The facts relevant to the Motions are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: Plaintiff's Statement of Undisputed Material Facts, [ECF No. 50-1]; Defendant's Statement of Undisputed Material Facts, [ECF No. 51 at 1–9]; and Defendant's Additional Undisputed Facts, [ECF No. 52-1 at 9–11].

Defendant's busiest library—for thirty-five years. Throughout Plaintiff's employment, Defendant was aware of her disability.

## I.      The New Service Model and its Effects on the Libraries Division

In 2014, the Libraries Division underwent an organizational restructuring (the "New Service Model") that culminated in 2016 and included changes to the hours of operation and staffing. After previously reducing its hours of operation in response to the 2007–2008 recession, the New Service Model expanded the Libraries Division's hours of operation. The New Service Model also altered the staffing model for regional libraries on Sundays from rotating employees from all branch libraries to self-staffing the regional libraries. As a result of these changes, all library aides assigned to other departments within the Libraries Division—including Adult Services, Youth Services, and Audiovisual—were reassigned to the Circulation Department. This restructuring made it necessary for all library aides to be cross-trained in, and regularly perform, the essential job functions specific to a library aide in the Circulation Department.

As a result of the New Service Model, Northwest Regional Library lost four library aides who were not replaced; and, as of 2017, there were fewer supervisors because of previous layoffs. Following the implementation of the New Service Model, the Circulation Department consisted of approximately 19 library aides. A library aide's shift typically ranges from 2 to 4 hours and all part-time and full-time library aides are expected to perform their essential job functions.[2] Moreover, the Libraries Division is responsible for training library aides in their essential job functions.

---

[2] Jennifer Dibono, a Professional Standards Specialist, did not know whether a library aide performed every essential job function because she was only in contact with those library aides referred to her.

**II.      Plaintiff's Accommodations Prior to Her Transfer to the Circulation Department**

In 1981, Plaintiff joined the Libraries Division as a part-time library page. On January 16, 2001, Plaintiff met with Defendant's Division of Equal Employment and Small Business Opportunity (the "DEESBO") to discuss a possible accommodation because of her disability.[3] In a memorandum dated June 19, 2001, the DEESBO determined that Plaintiff "is substantially limited," as defined by the ADA. In August 2001, Defendant promoted Plaintiff to a full-time library aide in the Libraries Division based on her years of experience as a library page. In February 2001, Plaintiff was transferred to the Youth Services Department of the Northwest Regional Library, where she performed manual tasks—such as shelving and retrieving books—and assisted with various children's programs. Plaintiff generally received favorable annual performance reviews with the Youth Services Department, including high marks and positive remarks on her work.

**III.      Plaintiff's Accommodations Following Her Transfer to the Circulation Department**

As a result of the New Service Model's organizational changes, Defendant transferred Plaintiff from the Youth Services Department to the Circulation Department in August 2016. On August 31, 2016, June Fleischmann, a Library Specialist Supervisor, and Gabrina Persad, a former Library Specialist, met with Plaintiff to communicate the essential job functions of a library aide in the Circulation Department. Plaintiff was advised that she would be required to perform all the essential job functions of a library aide in the Circulation Department.[4] Some of those essential job functions—which Defendant has not altered since at least August 2009—include: (1)

---

[3] Specifically, Plaintiff requested that she be waived from taking a promotional exam and instead be promoted to the library aide position based on her experience as a library page. [ECF No. 50-6 at 1].

[4] Prior to the implementation of the New Service Model, Defendant did not require Plaintiff to perform many of the essential job functions of a library aide in the Youth Services Department. Other library aides, however, were required to perform those essential job functions.

producing accurate reports and statistics using appropriate software; (2) being proficient in the use of required technology and software applications; (3) performing mathematical functions involving addition, subtraction, multiplication, and/or division; (4) accurately handling money, operating a cash register, and using a calculator; (5) processing library card applications and issuing library cards; and (6) registering people to vote. After advising Ms. Fleischmann of her disability and that she was unable to perform the essential job function of handling money, Plaintiff signed a document which detailed those essential job functions.[5]

On November 28, 2016, the Libraries Division temporarily suspended the requirement that Plaintiff work the Circulation desk and handle money. Additionally, the Libraries Division referred Plaintiff to the Office of Intergovernmental Affairs and Professional Standards (the "OIAPS") for a determination as to whether she qualified for a reasonable accommodation. On January 9, 2017, Plaintiff submitted an ADA Accommodation Questionnaire to the OIAPS. In it, Plaintiff requested a work environment that did not require her to perform the essential job functions of a library aide in the Circulation Department and included an Addendum signed by James Leogue, Plaintiff's father, specifying the essential job functions that she could not perform. Mr. Leogue specified that Plaintiff could not perform thirty percent (30%) of the essential job functions involving mental abilities and sixty-six percent (66%) of the essential job functions involving the use of equipment. Pending a determination by the OIAPS, the Libraries Division did not require that Plaintiff perform any of the essential job functions she was unable to perform. The OIAPS review concluded, as the DEESBO previously concluded, that Plaintiff had a disability covered by the ADA.

On March 20, 2017, Plaintiff, Mr. Leogue, the OIAPS, and the Libraries Division met for the first of two interactive meetings to discuss Plaintiff's disability, its impact on her ability to

---

[5] The parties dispute whether Plaintiff was forced to sign the essential job functions document. *Compare* [ECF No. 52-1 at 3 ¶ 26; 10 ¶¶ 11–12], *with* [ECF No. 50-1 at 5 ¶ 26], *and* [ECF No. 60-1 at 6 ¶¶ 11–12].

perform the essential job functions of a library aide, and possible reasonable accommodations. During the first meeting, Plaintiff requested to not handle money and to be transferred back to the Youth Services Department. Plaintiff did not make any other requests or recommendations. Representatives from the Libraries Division suggested providing Plaintiff additional training as an accommodation, and Plaintiff agreed.

Following the first interactive meeting,[6] the OIAPS memorialized the Libraries Division's workplace accommodation for Plaintiff, which consisted of three phases of training over 90 days. [ECF No. 51-1 at 22–23].[7] In the first phase, Plaintiff would receive one-on-one training on the essential job functions of collecting fines, issuing bus passes, installing money to patrons' library cards, checking out materials to patrons, evaluating materials for completion and damage, and data processing. *Id.* at 22–23. In the second phase, Plaintiff would shadow designated staff from the Libraries Division. *Id.* at 23. In the third phase, designated Libraries Division staff would shadow and provide guidance to Plaintiff while she performed the essential job functions. *Id.* Circulation Department supervisors and Library Specialists were responsible for facilitating the training. The first phase of Plaintiff's training typically consisted of one to two hours per shift of one-on-one training with a computer software designed to teach Plaintiff how to utilize and count money and then transfer those learned skills to real money.[8] The record suggests that the first phase also

---

[6] Defendant notes—and the record confirms—that Plaintiff received training for several months prior to and after she submitted her ADA Accommodation Questionnaire. During this time, Plaintiff received training on various essential job functions, including answering and transferring phone calls, using a printer, emailing, receiving and discharging audiovisual materials, writing notes on a customer's account, and performing simple computer functions such as using a mouse and typing. *See generally* [ECF No. 52-2]. Ms. Fleischmann required Plaintiff to undergo additional training for tasks for which Plaintiff continued to struggle. *See, e.g.*, *id.* at 4–5.

[7] The parties do not include a description of the three phases of Plaintiff's training in their statements of uncontested facts. As there does not appear to be a factual dispute as to the three phases, the Court includes a description of it for context.

[8] The parties dispute whether Plaintiff received 76 days or 120 days of training in the essential job function of counting and handling money. *Compare* [ECF No. 52-1 at 10 ¶ 5] (Defendant states that the training lasted 120 days), *with* [ECF No. 60-1 at 5 ¶ 5] (Plaintiff states that the training lasted 76 days).

involved Plaintiff reading, practicing computer skills, and working the Circulation desk.[9] *See, e.g.*,
[ECF No. 52-2 at 28–47].

On June 5, 2017, Plaintiff, Mr. Leogue, the OIAPS, and the Libraries Division met for a
second interactive meeting to evaluate whether the training enabled Plaintiff to perform the
essential job functions of a library aide in the Circulation Department. Because the training was
not successful, Plaintiff could not advance past the first phase of training. In fact, both Plaintiff
and Mr. Leogue admitted that no amount of training would have enabled Plaintiff to properly
perform her essential job functions, including handling money. No other alternative reasonable
workplace accommodations were identified beyond Plaintiff's request to not perform certain
essential job functions and to return to the Youth Services Department.

Because the additional training was unsuccessful and no alternative reasonable work
accommodations were presented, the Libraries Division referred Plaintiff to Defendant's Human
Resources Staffing Services Section to assist her in seeking reassignment. During the 60-day
reassignment period, Plaintiff worked with the Human Resources Staffing Services Section to find
a demotion or lateral position for which she qualified. The Libraries Division agreed to hold
Plaintiff's position as a library aide while she sought reassignment and to continue the additional
training. Plaintiff's responsibilities also remained modified during this period and through her
separation. Neither Plaintiff nor Defendant was able to identify a position within the 60-day period.
However, Defendant allowed Plaintiff to remain employed until December 6, 2017, so she could
achieve her thirty-fifth employment anniversary and to continue exploring alternative employment

---

[9] Plaintiff concedes that she is the only library aide who was unable to properly perform the essential job functions
while at the Circulation desk and would have to direct patrons to other library aides for assistance. Plaintiff, however,
disputes that she received training on all the essential job functions. *See* [ECF No. 50-1 at 9 ¶ 58].

options with Defendant. On December 5, 2017, Defendant informed Plaintiff that her official date of separation would be December 6, 2017. She was terminated the following day.

### IV.     Procedural History

On April 17, 2018, Plaintiff filed this action against Defendant, bringing claims for discrimination in violation of the ADA and the Florida Civil Rights Act (the "FCRA"). [ECF No. 1]. On September 13, 2019, Plaintiff and Defendant each filed a Motion for Summary Judgment. [ECF Nos. 50 & 51]. Plaintiff seeks summary judgment in her favor, arguing that Defendant failed to reasonably accommodate her disability and failed to provide training adequately tailored to her disability. Defendant argues that summary judgment should be entered in its favor because Plaintiff is not a qualified individual who can perform the essential job functions of a library aide. On January 8, 2020, the Court heard oral argument on the Motions. [ECF No. 79].

### LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–657 (2014) (per curiam) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(a)). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of her burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm*

*Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted).

"Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016) (citation omitted), *vacated on other grounds*, 2016 WL 11503064, at *1 (11th Cir. May 31, 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014) (per curiam). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Furthermore, conclusory allegations will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citation omitted).

## DISCUSSION

The Court finds that Plaintiff has not satisfied her burden of establishing a *prima facie* case of disability discrimination under the ADA or the FCRA. There is no dispute that Plaintiff has a disability. However, Plaintiff has not established that she is a qualified individual or that Defendant's actions were discriminatory. Furthermore, there is no evidence that Defendant's legitimate, non-discriminatory reason for Plaintiff's separation is pretextual.

## I.      ADA Claim (Count I)

### A.      The ADA Generally

The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA is designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, and to provide clear, strong, consistent, enforceable standards addressing discrimination." 29 C.F.R. § 1630.1(a). "In the employment context, the ADA was created to give qualified employees protection from discrimination based on their known or perceived disability." *Quick v. Tripp, Scott, Conklin & Smith, P.A.*, 43 F. Supp. 2d 1357, 1363 (S.D. Fla. 1999); *see also* 29 C.F.R. § 1630.1(a) (the ADA "requir[es] equal employment opportunities for individuals with disabilities."). "Thus, '[a]n employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment . . . that is regarded as substantially limiting a major life activity.'" *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1228 (11th Cir. 2005) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 490 (1999)).

### B.      Establishing a *Prima Facie* Case for Disability Discrimination under the ADA

When considering an ADA discrimination claim, "the Court employs the same burden-shifting framework used to analyze [other] . . . employment discrimination claims . . . ." *Dulaney v. Miami-Dade Cnty.*, 785 F. Supp. 2d 1343, 1354 (S.D. Fla. 2011) (citations omitted), *aff'd*, 481 F. App'x 486 (11th Cir. 2012). To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she was a "qualified individual" at the relevant time; and (3) the employer discriminated against her because of her disability. *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019) (citations omitted); *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000) (citations omitted); *see also Mont-Ros v. City of W. Miami*, 111 F. Supp. 2d 1338, 1350 (S.D. Fla. 2000) (noting a fourth element requiring a plaintiff to "identif[y] for the [employer] a reasonable accommodation . . . ."). "[T]he ultimate

burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Mont-Ros*, 111 F. Supp. 2d at 1349 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). The plaintiff may either rely on direct or circumstantial evidence to prove discrimination. *See id.* Where circumstantial evidence is relied on to prove discrimination—as it is here—the Court will analyze the claim under the four-pronged, burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.*

Once the plaintiff establishes a *prima facie* case of disability discrimination, the burden shifts to the employer as the defendant to "articulate a legitimate, non-discriminatory reason for the challenged action." *Dulaney*, 785 F. Supp. 2d at 1354 (quoting *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001)); *see also McDonnell Douglas*, 411 U.S. at 802 ("The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."). "This burden is merely one of production, not persuasion, and is exceedingly light." *Mont-Ros*, 111 F. Supp. 2d at 1349–50 (citations omitted); *Barnes v. Cochran*, 944 F. Supp. 897, 901 (S.D. Fla. 1996) (citation omitted), *aff'd sub nom. Barnes v. Broward Cnty. Sheriff's*, 130 F.3d 443 (11th Cir. 1997); *see also Quick*, 43 F. Supp. 2d at 1364 (the defendant "does not have to persuade a court that it was actually motivated by the reason advanced." (citation omitted)). Once the defendant meets its burden, "the plaintiff must then proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual." *Dulaney*, 785 F. Supp. 2d at 1354 (citation and internal quotation marks omitted). To do this, the plaintiff must show that the proffered reason for the employment decision was false and that the real reason for the action was discrimination. *Mont-Ros*, 111 F. Supp. 2d at 1350 (citations omitted); *Quick*, 43 F. Supp. 2d at 1364 (citations omitted).

**C.      Plaintiff Fails to Establish a *Prima Facie* Case for Disability Discrimination**

Plaintiff fails to establish her initial burden of showing a *prima facie* case for disability discrimination. While it is undisputed that she is disabled under the ADA, she fails to show that she is a "qualified individual" or that Defendant discriminated against her because of her disability.

*1.      Plaintiff has not established that she is a qualified individual.*

A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To be considered a qualified individual, Plaintiff must "show either that [s]he can perform the essential functions of [her] job without accommodation, or, failing that, show that [s]he can perform the essential functions of [her] job with a reasonable accommodation." *D'Angelo*, 422 F.3d at 1229 (quoting *Davis*, 205 F.3d at 1305). If Plaintiff fails to show that she is able to perform the essential job functions of a library aide, "even with an accommodation, [s]he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Davis*, 205 F.3d at 1305 (citing *Cramer v. Florida*, 117 F.3d 1258, 1264 (11th Cir. 1997)); *see also D'Angelo*, 422 F.3d at 1229 ("In other words, the ADA does not require [the employer] to eliminate an essential function of [the plaintiff's] job." (citation omitted)).

"Essential functions are 'the fundamental job duties of the employment position the [disabled employee] holds or desires.'" *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001) (alteration in original) (quoting 29 C.F.R. § 1630.2(n)(1)).  A district court determines on a case-by-case basis which functions of an employment position are essential. *Lewis*, 934 F.3d at 1182 (quoting *D'Angelo*, 422 F.3d at 1230). The ADA provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential . . . ." 42 U.S.C.

11

§ 12111(8). Other considerations the district court may make include "(1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs." *Davis*, 205 F.3d at 1305 (citing 29 C.F.R. § 1630.2(n)(3)).

The Court finds that Plaintiff fails to establish that she is a qualified individual for the library aide position in the Circulation Department. Specifically, Plaintiff fails to meet her burden of proving that, with or without a reasonable accommodation, she could perform the essential job functions required of a library aide in the Circulation Department. *See Lucas*, 257 F.3d at 1259 (finding that the plaintiff failed to show that he was "otherwise qualified" because he did not put forth sufficient evidence to show that he could perform the essential job functions with or without a reasonable accommodation). The record also makes clear that the essential job functions that Plaintiff could not perform were in fact essential.

Whether true for all the listed job functions of a library aide, three are essential and are the basis for many of the other job requirements. Those include the ability to maintain proficiency in the use of required technology and software applications, to perform mathematical functions, and to accurately handle money. Plaintiff could not perform any of these three essential job functions with or without accommodation or training and did not believe that any level of training could assist her. Importantly, Plaintiff conceded that she could not perform the essential job functions of a library aide, *see* [ECF No. 51 at 6–7 ¶ 38]; [ECF No. 52-1 at 10 ¶ 9], and Plaintiff confirmed that handling money is an essential job function of a library aide, *see* [ECF No. 52-1 at 11 ¶ 14]. Therefore, Plaintiff is not a qualified individual covered by the ADA. *Davis*, 205 F.3d at 1305 (citing *Cramer*, 117 F.3d at 1264).

2.      *Plaintiff failed to identify a reasonable accommodation.*

Even if Plaintiff could establish that she was a "qualified individual" under the ADA, she has not shown that Defendant failed to provide a reasonable accommodation for her disability and thus discriminated against her. The ADA provides that an employer "discriminate[s] against a qualified individual on the basis of disability" by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . ." 42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.9(a). A reasonable accommodation "*may include . . .* job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . appropriate adjustment or modifications of examinations, training materials or policies, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (emphasis added); *see also* 29 C.F.R. § 1630.2(o)(2) (elaborating what a reasonable accommodation may include). Thus, "the ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer." *Davis*, 205 F.3d at 1305 (quoting *Morisky v. Broward Cnty.*, 80 F.3d 445, 447 (11th Cir. 1996)).

An employer, however, is only obligated to provide a reasonable accommodation that enables an employee with a disability to perform the essential job functions of the employee's position. *Lucas*, 257 F.3d at 1255 (citation omitted). The burden lies with the plaintiff to identify a reasonable accommodation that would allow her to perform the essential job functions. *Id.* at 1255–56 (citations omitted). If the plaintiff is able to bring forth a reasonable accommodation, the employer may then "present evidence that its employee's requested accommodation imposes an

unreasonable hardship." *Quick*, 43 F. Supp. 2d at 1368 (citations omitted). The plaintiff is only entitled to a reasonable accommodation, not one that she prefers. *Id.* at 1369. "Moreover, an employer is not required to create a position to accommodate a disabled employee, nor must an employer reassign the employee to a position occupied by a non-disabled employee." *Id.* (citation omitted).

Plaintiff argues that Defendant failed to reasonably accommodate her by not properly training her in the essential job functions of a library aide and by not allowing her to return to the Youth Services Department.[10] The Court disagrees. First, Plaintiff fails to show that her training was unreasonable. Plaintiff agreed to undergo additional training, and there is no indication that she requested that the training be tailored in a particular way. And, when the training failed to assist Plaintiff, she suggested no reasonable alternatives to the training. Thus, Plaintiff failed to meet her burden of identifying reasonable accommodations as to the training that would allow her to perform the essential job functions of a library aide. *Lucas*, 257 F.3d at 1255–56 (citations omitted).

Second, returning Plaintiff to her previous position in the Youth Services Department was not a reasonable accommodation. Defendant is not required to restructure the library aide position by "transform[ing] the position into another one [and] eliminating functions that are essential . . . ." *Lucas*, 257 F.3d at 1260 (citations omitted). Without a proposed reasonable accommodation that would allow her to perform the essential job functions of a library aide, Plaintiff fails to bring forth a *prima facie* case for disability discrimination under the ADA. Accordingly, summary judgment must be granted in favor of Defendant and denied as to Plaintiff.[11]

---

[10] The Court need not consider whether the training was a hardship for Defendant because Defendant states that there was no hardship in providing Plaintiff with additional training.

[11] Although the Court need not engage in the remainder of the analysis because Plaintiff failed to meet her initial burden, the Court notes that Defendant sufficiently met its burden of articulating a legitimate, nondiscriminatory

14

## II.     FCRA Claim (Count II)

The FCRA makes it "an unlawful employment practice for an employer . . . [t]o discharge . . . any individual . . . because of such individual's . . . handicap . . . ." Fla. Stat. § 760.10(1)(a). Because the FCRA is modeled after the ADA, *Quick*, 43 F. Supp. 2d at 1374, "ADA and FCRA claims are analyzed under the same framework," *Lyons v. Miami-Dade Cnty.*, 791 F. Supp. 2d 1221, 1227 (S.D. Fla. 2001) (citing *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1257 (11th Cir. 2007)), *aff'd sub nom. Lyons v. Miami Dade Cnty. Fire Rescue Dep't*, 470 F. App'x 801 (11th Cir. 2012). For the reasons previously stated, summary judgment is granted in favor of Defendant and denied as to Plaintiff on the FCRA claim. *See Quick*, 43 F. Supp. 2d at 1374.

### CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      Plaintiff Coleen A. Leogue's Motion for Summary Judgment, [ECF No. 50], is **DENIED**;

2.      Defendant Broward County's Motion for Summary Judgment, [ECF No. 51], is **GRANTED**;

3.      All pending motions are **DENIED as moot**;

4.      Pursuant to Federal Rule of Civil Procedure 58, **final judgment shall be entered separately**; and

---

reason for Plaintiff's separation. Here, the implementation of the New Service Model between 2014 and 2016 greatly expanded operations with a limited staff, which required having library aides regularly perform all essential job functions in the Circulation Department. Plaintiff does not establish that Defendant's reasons were pretextual. *See Quick*, 43 F. Supp. 2d at 1372–73. In fact, Plaintiff concedes in her briefings that the New Service Model itself was not pretext for Plaintiff's termination. *See* [ECF No. 59 at 10]. Therefore, there is no evidence to establish that Defendant's proffered reasons for Plaintiff's separation are pretextual.

5.      This case is **CLOSED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 22nd day of February, 2021.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

16